IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WISDOM VAUGHN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-CV-02612-N |
| | § | |
| SOLERA HOLDINGS, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendants Solera Holdings, LLC ("Solera") and Spireon, Inc.'s ("Spireon") motion for summary judgment [35]. Because Defendants have shown that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law, the Court grants the motion.

### I. ORIGINS OF THE DISPUTE

This is an employment discrimination case arising from Plaintiff Wisdom Vaughn's employment at Spireon, which was later acquired by Solera. Vaughn is African American, female, and a lesbian and brings race and sex discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. Pl.'s Compl. ¶¶ 32–42 [1].

Vaughn initially worked with Spireon as an independent contractor from 2016 to 2018, then joined Spireon as an IT Specialist in the Dallas office from 2018 to 2021. Defs.' App. 10, 17, 20 [37]. IT Specialists are responsible for providing technical support to Spireon employees, sometimes called "internal customers." *Id.* at 22, 93. Internal

MEMORANDUM OPINION AND ORDER – PAGE 1

customers' requests for help are called IT tickets. *See id.* at 22. Customer-service skills are important in the IT Specialist role. *Id.* at 8, 93, 165. Vaughn reported to Mike Massimino until February 2021, then reported to Coedy Zuercher until her termination. *Id.* at 86–87.

Vaughn and her counterpart, David Stackis — an IT Specialist located in Iowa — had interpersonal issues as early as 2018. *Id.* at 16, 29. To address these issues, Massimino organized weekly virtual meetings for Vaughn and Stackis to get to know each other better and work more harmoniously together. *Id.* at 29. However, Stackis and Vaughn continued to have trouble working together, and each made complaints about the other. First, Stackis complained that Vaughn communicated with the IT team in an unprofessional manner, which resulted in Massimino giving Vaughn a disciplinary action. *Id.* at 31, 156. Then, Vaughn complained about Stackis inappropriately reviewing her IT tickets, which resulted in Stackis receiving a disciplinary action. *Id.* at 157. Stackis also complained that Vaughn made a rude gesture toward him during a Zoom call. *Id.* at 47, 76–77; Pl.'s App. 540 [43-2]. Melissa Brabham, a human resources employee, investigated the complaint. Pl.'s App. 540, 623. When talking to Vaughn about it, Vaughn denied Stackis's allegation and called him a "racist homophobe." *Id.* at 623. After the investigation, Brabham and Massimino facilitated recurring mediation meetings between Stackis and Vaughn. *Id.* at 540, 623; *see also* Defs.' App. 30.

During an IT team meeting on January 6, 2021, Massimino broadcasted videos of the events at the Capitol and made jokes about President Donald Trump. Defs.' App. 13. The IT team then engaged in a heated political discussion, and Stackis stated that Vaughn

MEMORANDUM OPINION AND ORDER – PAGE 2

is "too Black," "ignorant," and "part of a Black Lives Matter movement." *Id.* at 11–12. After the IT team meeting, Massimino apologized to Vaughn for starting the political discussion and stated that Stackis was wrong. *Id.* at 16, 159. He also told Vaughn that she did not need to talk to Stackis "other than [for] any kind of work-related type of activity." *Id.* at 159. Soon after the January 6 meeting, Massimino received a promotion, and Zuercher became Vaughn's direct supervisor. *Id.* at 86–87.

On March 3, while on a call to assist an internal customer with an IT ticket, Vaughn overheard Cynthia Myers, a Spireon paralegal, say to another employee, "[Vaughn] doesn't talk and her big self is not educated enough to handle the Knoxville office . . . she is just a waste here." Pl.'s App. 59, 521–22. Myers also "talked about the texture of [her] hair." *Id.* at 059. Vaughn emailed Janet Leong, the vice president of human resources, about the incident, and Leong said she would investigate. *Id.* at 521–22. The investigation resulted in Myers receiving a written warning and having to apologize to Vaughn. *Id.* at 326.

Then, in May, Chris Constancio, a former sales employee at Spireon, emailed Vaughn after he was terminated and told her that Jim Kronenberger — a sales executive — called Vaughn "the N word" and said other "extremely mean things about" her. Pl.'s App. 590–91. Constancio stated that he had an audio recording of the statements. *Id.* Vaughn told Zuercher about Constancio's email, and Zuercher emailed Leong and Brabham about Constancio's allegations. *Id.* Leong replied that the human resources team was handling the situation with Constancio and that they did not believe his allegations. *Id.* She also directed Zuercher to assign Kronenberger's IT tickets to someone other than Vaughn to be sensitive to her feelings. *Id.* at 590. Constancio did not provide an audio

MEMORANDUM OPINION AND ORDER – PAGE 3

recording to human resources, so Spireon concluded that his claims were unsubstantiated. *Id.* at 330–32, 590–91; *see also* Defs.' App. 19.

Several internal customers complained about Vaughn's work in 2021. On April 23, an internal customer complained that Vaughn left her waiting for several hours and ultimately failed to help her set up email on her phone. Defs.' App. 95, 103–04. Next, in late May, another internal customer complained that Vaughn closed his IT ticket without helping him set up remote email access. *Id.* at 96, 105–07. And on June 7, a different internal customer complained that Vaughn did not help him with his IT ticket, leaving him without email on his phone. *Id.* at 96–97, 108–12. After consulting with human resources, Zuercher and Massimino issued Vaughn a written warning for her performance issues on June 29. *Id.* at 89, 162–65, 201–02. The written warning listed thirteen performance issues, such as Vaughn's falling behind on and failing to complete assigned IT tickets; providing poor service to and not communicating with internal customers; being late to or not attending required meetings; clocking in and out at irregular times and setting her Slack status to "away" for extended periods of time;[1] and not following instructions when setting up computers. *Id.* at 113–15. The warning also provided guidance on how to improve each issue and stated that failure to improve would result in "further disciplinary action, up to and including termination." *Id.*

Internal customers continued to complain about Vaughn's performance after Spireon issued the written warning. Defs.' App. 116 (July 14 complaint); 140–41 (July 19

---

[1] Spireon used Slack as an internal messaging platform.

MEMORANDUM OPINION AND ORDER – PAGE 4

complaint); 142–46 (July 23 complaint); 147–48 (July 27 complaint). Vaughn also continued to have many open IT tickets in her queue. *Id.* at 128. So, on July 30, Spireon placed Vaughn on a performance improvement plan ("PIP"). *Id.* at 78–80. The PIP identified five performance concerns, including (1) not communicating enough with internal customers; (2) being aggressive with and unhelpful to internal customers; (3) not using the company's preferred contact method when handling IT tickets; (4) failing to complete IT tickets; and (5) not completing IT tickets correctly. *Id.*

Internal customers kept complaining about Vaughn's performance after Spireon issued the PIP. *See id.* at 149–50 (August 6 complaint); 151–53 (September 2 complaint). Because Vaughn's performance did not improve, Zuercher and Massimino recommended Vaughn's termination. *Id.* at 91–92, 138, 175. Leong approved the recommendation to terminate Vaughn, and Spireon terminated her on September 13, 2021. *Id.* at 194, 203.

Defendants now move for summary judgment on all Vaughn's claims. Defs.' Mot. Br. 1 [36].

## II. THE COURT SUSTAINS DEFENDANTS' HEARSAY OBJECTIONS

Defendants object to two sentences in Vaughn's response brief and one paragraph in Vaughn's declaration as hearsay. Defs.' Reply 22 [56]. Defendants object to the following statements in Vaughn's response brief:

> Lewandowski had witnessed Stackis yelling at her on Zoom calls and being derogatory to her and Vaughn asked him if Stackis did that to him, and he confirmed Stackis did not. (App. 88). . . . Vaughn also talked to Kimball and asked if Stackis treated him the way he treated her, . . . and he also said Stackis did not treat them disrespectfully or by raising his voice to them. (App. 88–90).

Pl.'s Resp. Br. 41 [45].[2]  These statements cite to and rely on testimony Vaughn gave in her deposition about statements Lewandowski and Kimball had made. *See* Pl.'s App. 88–90.  Defendants also object to a portion of paragraph 8 of Vaughn's declaration, which states: "Other IT team members sometimes came to me and told me Stackis had made comments to the effect he did not think my work was correct or checking in with them about whether I had performed my work correctly." *Id.* at 669.  Vaughn did not respond to these objections.

The Court first determines that these statements constitute hearsay.  The statements rely on out-of-court statements made by other IT team members, and Vaughn offers them for the truth of the matters asserted.  Further, no hearsay exceptions apply.  However, although "the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted).  The "burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Johnson v. City of Fort Worth*, 565 F. Supp. 3d 817, 825 (N.D. Tex. 2021) (quoting FED. R. CIV. P. 56(c)(2) advisory comm.'s note to 2010 amend.)).  Here, the Court finds that Vaughn has not met her burden to show how these hearsay statements would be presented in a form that would be admissible at trial.  Accordingly, the Court sustains Defendants' objections to these statements.

---

[2] Jeff Lewandowski and Don Kimball were Spireon IT team members. *See* Pl.'s App. 351–52.

### III. SUMMARY JUDGMENT LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Bargher v. White*, 928 F.3d 439, 444 (5th Cir. 2019) (citation omitted). Factual controversies are resolved in favor of

the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

### IV. THE COURT GRANTS THE MOTION FOR SUMMARY JUDGMENT

Vaughn claims that Spireon discriminated against her based on her race and sexual orientation[3] and retaliated against her in violation of Title VII and 42 U.S.C. § 1981. Pl.'s Compl. ¶¶ 32–42.

#### A. *Legal Standard under the* McDonnell Douglas *Framework*

The framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to race and sex discrimination and retaliation claims. Under *McDonnell Douglas*, Vaughn bears the initial burden of establishing prima facie cases of discrimination and retaliation. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). Once accomplished, the burden to produce — but not persuade — shifts to Defendants, who must provide a nondiscriminatory, nonretaliatory explanation for her termination. *Id.* The burden then shifts back to Vaughn to raise "a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is [her] protected characteristic." *Id.* at 412 (citing *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). The "burden of persuasion remains with

---

[3] Discrimination "on the basis of sexual orientation . . . is a form of sex discrimination under Title VII." *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 598 (5th Cir. 2021) (citing *Bostock v. Clayton County*, 590 U.S. 644 (2020)).

the employee throughout." *Saketkoo v. Adm'rs of Tulane Ed. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022) (citation omitted).

### B. Vaughn Fails to Make a Prima Facie Case of Race Discrimination

To establish a prima facie case of race discrimination, Vaughn must show that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 429 (5th Cir. 2023) (citations omitted). The parties dispute whether Vaughn has established the fourth element of her prima facie case of race discrimination.

Defendants produced evidence that Spireon replaced Vaughn with Sherman Duncan, who is also African American. Defs.' App. 84; *see also* Pl.'s App. 354. Accordingly, Vaughn was not replaced by someone outside her protected group.

Vaughn argues that she has established that Spireon treated her less favorably than similarly situated employees outside the protected group. Pl.'s Resp. Br. 21. "The 'similarly situated' prong requires [Vaughn] to identify at least one coworker outside of [her] protected class who was treated more favorably 'under nearly identical circumstances.'" *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). This coworker — called a comparator — must hold the same job or have the same responsibilities as Vaughn, have the same supervisor as Vaughn, and have a history of performance issues

similar to those of Vaughn. *Id.* Here, Vaughn identifies Stackis — a white IT Specialist — as a comparator who was treated more favorably than she was. Pl.'s Resp. Br. 21.

The Court finds that Spireon did not treat Stackis more favorably under nearly identical circumstances because his history of performance issues is not sufficiently similar to Vaughn's. Most notably, several internal customers complained about Vaughn's service as an IT Specialist. *See* Defs.' App. 95, 103–04 (April 23 complaint); 96, 105–07 (May 25 complaint); 96–97, 108–12 (June 7 complaint); 116 (July 14 complaint); 140–41 (July 19 complaint); 142–46 (July 23 complaint); 147–48 (July 27 complaint); 149–50 (August 6 complaint); 151–53 (September 2 complaint). In contrast, Vaughn has not presented evidence that Stackis received a similar number of complaints from internal customers. Further, in addition to the performance issues raised in the internal customer complaints, Spireon identified in Vaughn's written warning and PIP that she had other issues, such as failing to complete assigned IT tickets; not attending required meetings; clocking in and out at irregular times; and not following instructions when handling IT tickets. *Id.* at 78–80, 113–15. Again, Vaughn does not present evidence that Stackis has a history of these kinds of performance issues. The Court thus determines that Stackis is not a valid comparator.[4]

Accordingly, the Court finds that Vaughn has not shown that she was treated less favorably than similarly situated employees outside the protected group. Because Vaughn

---

[4] Even if Stackis was a valid comparator, when he acted in a way that warranted disciplinary action — such as for improperly looking at Vaughn's IT tickets and for making an unwelcome comment to a female coworker — Spireon issued written warnings to him. *Id.* at 180; *see also* Pl.'s App. 496.

has not established a prima facie case of race discrimination, the Court grants Defendants summary judgment on this claim.

### C.  The Parties Agree that Vaughn Makes a Prima Facie Case of Sex Discrimination and Retaliation

For purposes of the motion for summary judgment, the parties agree that Vaughn has established prima face cases of sex discrimination and retaliation.  *See* Defs.' Mot. Br. 16, 17.

### D.  Spireon Articulated a Nondiscriminatory, Nonretaliatory Reason for the Termination

Next, Defendants must articulate a legitimate, nondiscriminatory, and nonretaliatory reason for the decision to terminate Vaughn.  Spireon claims that it gave Vaughn a written warning and PIP because of her poor job performance, and ultimately terminated Vaughn because she failed to show necessary improvements under the PIP.  *See* Defs.' Mot. Br. 8–11, 13, 16.  The Court holds that this is a legitimate, nondiscriminatory, and nonretaliatory reason for Vaughn's termination.  *See, e.g.*, *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) ("We have repeatedly held that a charge of 'poor work performance' is adequate when coupled with specific examples." (collecting cases)); *see also Conaty v. Brocade Commc'n Sys., Inc.*, 2009 WL 937044, at *6 (N.D. Tex. 2009) ("Noncompliance with a PIP is a legitimate, nondiscriminatory reason for terminating an employee." (citing *Young v. Comp USA*, 2004 WL 992577, at *4 (N.D. Tex. 2004)).

### *E. Vaughn Fails to Raise a Triable Issue of Pretext*

Vaughn claims that Spireon's articulated reason for her termination is pretextual. Pl.'s Resp. Br. 21. She may show pretext either (1) "through evidence of disparate treatment" or (2) "by showing that [Spireon's] proffered explanation is false or unworthy of credence." *Jackson v. Cal W. Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). "'An explanation is false or unworthy of credence,' and thus pretextual, 'if it is not the real reason for the adverse employment action.'" *Burton*, 798 F.3d at 233 (quoting *Laxton*, 333 F.3d at 578). The Court addresses each of Vaughn's arguments regarding pretext in turn.

**1. *Good Job Performance*** — First, Vaughn argues that evidence of her good job performance raises a genuine issue as to whether Spireon's proffered reason for her termination is pretextual. Pl.'s Resp. Br. 22–25.

Vaughn points to merit increases, bonuses, and positive performance reviews from Massimino in 2018 to 2020, as well as praise for her involvement in Spireon's move to the Dallas office in 2020, as evidence of her good job performance. *See id.* at 23–24. But Spireon's decisions to give Vaughn a written warning, place her on a PIP, and ultimately terminate her were based on her poor performance in 2021, not her performance in 2018 to 2020.[5] And these prior "good evaluations alone cannot establish that later unsatisfactory

---

[5] Although the adverse employment decisions are based on Vaughn's poor performance in 2021, there is evidence of Vaughn having performance issues between 2018 and 2020 as well. For example, in 2018, Vaughn received a written warning and two verbal warnings regarding rude comments she made to coworkers and not attending mandatory meetings, Pl.'s App. 531, and in 2020, Massimino told Vaughn that she needed to improve her speed in completing IT tickets. *Id.* at 525.

MEMORANDUM OPINION AND ORDER – PAGE 12

evaluations are pretextual." *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 390 (5th Cir. 2020) (citations omitted); *see also Villa v. Tex. Parks & Wildlife Dep't*, 2021 WL 1179271, at *15 (S.D. Tex. 2021) (finding that positive performance review from prior supervisor did not establish that subsequent supervisor discriminated).

Vaughn also notes documentation from August 2021 of positive internal customer feedback she received and a comment from Zuercher that she had finished most of her IT tickets. Pl.'s Resp. Br. 24–25. However, the positive internal customer feedback does not negate the plethora of internal customer complaints she also received in 2021, including in August and September. And the issue of open IT tickets is only one of five categories of performance issues included in Vaughn's PIP, so improvement in that category does not indicate that she fixed her other performance issues. Moreover, Zuercher testified that even when Vaughn closed IT tickets, she often did not adequately resolve the IT issue. *See* Defs.' App. 137 (Zuercher describing examples of Vaughn closing IT tickets even though the IT issue was unresolved). Thus, the Court finds that Vaughn's examples of good job performance do not raise a genuine issue of pretext. *See Dittmar v. 3M Co.*, 2022 WL 17858071, at *16 (N.D. Tex. 2022) (explaining that a plaintiff's ability to show some positive feedback is not sufficient to create a genuine issue as to whether the employer's reasons are unworthy of credence) (collecting cases)).

**2. Inadequate Investigation into Complaints** — Next, Vaughn asserts that Spireon inadequately investigated her complaints against Stackis and Kronenberger, evidencing pretext. Pl.'s Resp. Br. 25–29. Evidence "of an allegedly inadequate investigation 'does not require [the Court] to evaluate whether an employer's investigatory practices were

sufficient or correct, but only whether, considered with all other evidence, they tend to permit a rational inference that the employer's ultimate reason for taking an adverse action is unbelievable.'" *Dittmar*, 2022 WL 17858071, at *14 (quoting *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 829 (5th Cir. 2022)). "Whether evidence does so in a particular case depend on its 'nature, extent, and quality.'" *Owens*, 33 F.4th at 829 (quoting *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 889, 903 (5th Cir. 2000)).

Vaughn first asserts that Spireon failed to investigate Vaughn's complaints regarding discriminatory comments made by Stackis. Vaughn states that she made her first complaint of discrimination in 2020 when she called Stackis a "racist homophobe" during Spireon's investigation into Stackis's own complaint that Vaughn had made a rude gesture at him during a zoom call. Pl.'s App. 482, 623. The record does not support Vaughn's representation that human resources ignored her complaint. Instead, in response to the dueling complaints, Brabham arranged mediation sessions between Vaughn and Stackis in which Brabham and Massimino were present. *Id.* at 540, 623, 653. The second incident in which Stackis made discriminatory comments about Vaughn happened during the January 6, 2021, IT team meeting. Defs.' App. 159. After the meeting, Massimino apologized to Vaughn and said that she would not have to interact with Stackis unless it related to a work task. *Id.*

The incident with Kronenberger involved allegations made by a terminated employee that Kronenberger had made discriminatory comments about Vaughn. Pl.'s App. 590–91. Human resources looked into these allegations and concluded that they were unsubstantiated. *Id.* at 330–32, 590–91; *see also* Defs.' App. 19.

MEMORANDUM OPINION AND ORDER – PAGE 14

Human resources also investigated Vaughn's complaint that Myers made bullying remarks about her, and the investigation resulted in Myers receiving a written warning and having to apologize to Vaughn. Pl.'s App. 543–44.

Based on this record, the Court determines that Vaughn is unable to show that Spireon's handling of these complaints was inadequate in a way that permits a rational inference that Spireon's proffered reasons for her termination are unbelievable. *See Owens*, 33 F.4th at 829.

**3. Proximity of Complaints to Termination** — Vaughn then argues that the close timing of her complaints and termination is evidence of pretext. Pl.'s Resp. Br. 30–31. She asserts that "[c]lose timing alone may be sufficient to provide a causal connection, when the adverse action happens in close proximity to the discrimination complaint." *Id.* at 30. Temporal proximity gets Vaughn through her prima facie case of retaliation but does not, on its own, establish that Spireon's stated explanation for her termination was mere pretext. *See Garcia v. Prof. Contract Servs., Inc.*, 988 F.3d 236, 243 (5th Cir. 2019). Instead, at the pretext stage, a showing of "more than mere temporal proximity" is required. *See id.* at 243–44. Accordingly, the Court declines to find a triable issue of pretext based on Vaughn's temporal proximity argument.[6]

---

[6] Moreover, Vaughn states that she went to her supervisor and human resources "repeatedly" to ask what was being done to address Stackis's statements during the January 6, 2021, IT team meeting, and that "[w]ithin less than a month from one of her complaints" she was given a written warning. *See* Pl.'s Resp. Br. 30. However, she does not present evidence of when she made these complaints, so the Court cannot determine the proximity of these complaints to the written warning issuance, PIP issuance, or termination.

MEMORANDUM OPINION AND ORDER – PAGE 15

***4. Cat's Paw Theory*** — Fourth, Vaughn raises a "cat's paw" argument. She asserts that Stackis, Myers, and Kronenberger exhibited discriminatory animus and exerted influence over those who participated in the adverse employment decisions. Pl.'s Resp. Br. 31–35. To succeed under a cat's paw theory, "a plaintiff must establish that the person with a retaliatory motive somehow influenced the decisionmaker to take the retaliatory action." *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015)). Accordingly, the employee's influence with the decisionmaker must "be strong enough to actually cause the adverse employment action." *Id.* at 332.

Here, there is no evidence that Myers, Kronenberger, or Stackis exerted influence over Massimino's, Zuercher's, and Leong's decision to terminate Vaughn. Regarding Myers, human resources gave her a disciplinary action and required her to apologize for the comments she made about Vaughn, Pl.'s App. 326, indicating that Myers's comment carried no weight in the decision-making process. There is similarly no evidence that Stackis's discriminatory comments influenced the decision to terminate Vaughn. *See* Defs.' App. 174–75 (Massimino stating Stackis played no role in the decision to terminate Vaughn). To the contrary, Massimino apologized to Vaughn for Stackis's comments and stated that Stackis was wrong, showing Massimino did not agree with, and was not influenced by, Stackis's comments. *Id.* at 16, 159. And there is no evidence that the decisionmakers believed that Kronenberger made the alleged discriminatory comments about Vaughn, much less that they were influenced by them. Pl.'s App. 330–32, 590–91. Thus, there is no evidence supporting Vaughn's cat's paw theory.

5. ***Disparate Treatment*** — Next, Vaughn argues that pretext is evidenced by preferential treatment of IT employees Stackis, Kimball, and Lewandowski. Pl.'s Resp. Br. 35–42. As discussed in Section IV.B, Vaughn has not established that Stackis is a valid comparator because she has not shown that he was treated more favorably under nearly identical circumstances. And Kimball and Lewandowski are not valid comparators, either. A comparator "must hold the 'same job' or hold the same job responsibilities as a Title VII claimant." *Alkhawaldeh*, 851 F.3d at 427. Kimball was a Senior IT Specialist, and Lewandowski was an IT administrator; both roles have different responsibilities than Vaughn's role of IT Specialist. *See* Defs.' App. 84; Pl.'s App. 586. Further, Vaughn has not presented any evidence that Kimball or Lewandowski had comparable performance issues to Vaughn's. Accordingly, Vaughn cannot show that she was treated less favorably than similarly situated employees outside of her protected class.

6. ***Falsity*** — Next, Vaughn argues that she raises a triable issue of pretext through evidence that Defendants' assertions of inadequate job performance are false. Pl.'s Resp. Br. 42–44. She claims that her supervisors solicited and encouraged complaints about her performance for the purpose of justifying her termination and that the complaints were false. *Id.* at 42.

"Evidence of a sudden and unprecedented campaign to document [an employee's] deficiencies and thus justify a decision that had already been made . . . could raise an inference of pretext." *Burton*, 798 F.3d at 233 (citations omitted). In *Burton*, the Fifth Circuit reversed the district court's grant of summary judgment with respect to the employee's discrimination claim because, after deciding to terminate the employee, the

MEMORANDUM OPINION AND ORDER – PAGE 17

employer "acted to create an exculpatory paper trail." *Id.* at 237. Here, unlike in *Burton*, ample documentation of performance issues existed before Spireon gave Vaughn a written warning, placed her on a PIP, or decided to terminate her. Vaughn cites the following of Leong's testimony as evidence that Spireon solicited complaints to justify her termination: "I'm sure it was that they were collecting and trying to . . . gather information to . . . see if her performance was improving." *See* Pl.'s App. 339–40. This testimony does not suggest that Spireon embarked on an unprecedented campaign to document Vaughn's deficiencies and justify a decision to terminate her. Instead, Spireon monitored Vaughn's performance for improvements.

Vaughn then seems to assert that several of the internal customer complaints about her in the weeks before her termination were unfounded or unwarranted. Pl.'s Resp. Br. 43–44. In "cases where the employer takes an adverse action against an employee 'based on complaints lodged by . . . other employees, . . . the inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief.'" *Axmann v. U.S. Anesthesia Partners Holdings, Inc.*, 2025 WL 92354, at *4 (N.D. Tex. 2025) (Godbey, C.J.) (quoting *Waggoner v. City of Garland*, 987 F.2d 1160, 1165–66 (5th Cir. 1993)). Vaughn cites to nothing in the record suggesting that Massimino, Zuercher, or Leong did not believe in good faith the complaints from several internal customers against Vaughn. The Court thus declines to find a triable issue of pretext on this ground.

**7. Spireon's Credibility** — Lastly, Vaughn argues that pretext is evidenced by the lack of credibility of Spireon. Pl.'s Resp. Br. 44–47. Specifically, she argues that evidence

that she had more job responsibilities than her coworkers calls into question Spireon's assertion that the large number of open IT tickets in her queue constituted a real performance issue. *See id.* However, the only evidence that Vaughn had more job responsibilities than her coworkers is her own unsubstantiated assertion. And she presents no evidence that her purported additional responsibilities excused her large number of open IT tickets. And even if these responsibilities did excuse the number of open IT tickets, Vaughn has not raised a genuine issue of whether the several other performance issues listed in her written warning and PIP, *see* Defs.' App. 78–80, 113–15, are unworthy of credence.

Viewing the evidence in the light most favorable to Vaughn, the Court concludes that she fails to provide a basis on which a reasonable jury could find Spireon's proffered reasons for her termination were pretextual. Therefore, the Court grants summary judgment for Defendants on Vaughn's sex discrimination and retaliation claims.

## CONCLUSION

Because Defendants have shown that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law, the Court grants Defendants' motion for summary judgment on all Vaughn's claims.

Signed May 12, 2025.

_____
David C. Godbey
Chief United States District Judge